**Quinn E. Kuranz** (OR #114375)
quinn@kuranzlaw.com
The Office of Q.E. Kuranz, Attorney at Law, LLC
The Powers Building
65 SW Yamhill St., Suite 300
Portland, OR 97204
Tel: (503) 757-4749

**James H. Kaster*** (MN #53946, WI # 1001474)
kaster@nka.com
**Janet M. Olawsky*** (MN #393311)
jolawsky@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel:  (612) 256-3200
*pro hac vice motions forthcoming*

Attorneys for Plaintiff Susan Sullivan

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **SUSAN SULLIVAN**, <br><br> plaintiff, <br><br> v. <br><br> **JOHNSON & JOHNSON**, a New Jersey corporation, and **JANSSEN BIOTECH, INC.**, a Pennsylvania corporation, <br><br> defendants. | Case File No. <br><br><br> COMPLAINT <br> DEMAND FOR JURY TRIAL |

   Plaintiff Susan Sullivan, by her attorneys The Office of Q.E. Kuranz, Attorney at Law LLC and Nichols Kaster, PLLP, for her Complaint against Defendants states and alleges:

COMPLAINT - 1

## PARTIES

1. Plaintiff Susan Sullivan is an adult individual who, at all relevant times, resided in the State of Oregon.

2. Defendant Johnson and Johnson ("JNJ") is a domestic corporation incorporated in the State of New Jersey.

3. Defendant Janssen Biotech, Inc. ("JBI") is a domestic corporation incorporated in the State of Pennsylvania. JBI is part of the Janssen Pharmaceutical Companies of Johnson & Johnson.

## JURISDICTION AND VENUE

4. The Court has original jurisdiction under 28 U.S.C. § 1331, as this action arises under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

5. Sullivan brings additional claims under the Oregon Human Rights Act, for which jurisdiction exists under 28 U.S.C. § 1367.

6. Venue is proper in this District and division because a substantial part of the events and omissions giving rise to the claims occurred herein. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

7. Sullivan worked as a sales representative for Defendants and their predecessors from 1998 until she was constructively discharged on or about October 31, 2014 at the age of 55.

8. Defendants have many overlapping functions, such as a shared Human Resources department ("HR").

9. Throughout her employment, Sullivan consistently received high reviews and was promoted to the highest level of sales representative. She was awarded the President's Club

honor on multiple occasions (which recognizes the top 10% of employees), was a regional leader and mentor, selected for nationally-recognized teams, and initiated and co-led the project development for a nationally-utilized resource.

10. On or about March 1, 2013, Sullivan began reporting to new Senior District Manager Bob Hartman.

11. From the outset, Hartman was condescending, abrasive, and threatening to Sullivan. He shouted at her, their phone calls were racked with tension, and he would end conversations abruptly.

12. Hartman noticeably treated Sullivan less favorably than her younger, male coworkers. He frequently "fist-bumped" the males and praised them for their competitiveness and aggressiveness.

13. During Sullivan's first one-on-one field ride with Hartman, he made clear she did not have a future in the organization despite being one of the best sales reps in the company. He claimed the "old" sales reps had become complacent and it was a "new time" for the company.

14. Hartman began attempting to derail Sullivan's successful career. He refused to allow her to participate in career-building opportunities and was particularly against her involvement in female-centered projects, such as the Women's Leadership Initiative Meeting. Tellingly, his refusals were coupled with "suggestions" that she should instead spend time with her family.

15. After threatening that Sullivan might "pay for it later" in her performance reviews (which he wrote) if she went to the meetings, Sullivan called Hartman's supervisor, Regional Director John Hogan, in July 2013 to report his bullying and ask for a 360° review of Hartman— a way for employees to give feedback on a manager with Human Resources' guidance.

16. On a field ride with National Sales Director Marti Heckman on or about October 3, 2013, Heckman corroborated Hartman's ominous remarks about "old" representatives, telling Sullivan that Defendants were "trying to create a performance culture with *diversity*," a thinly-veiled reference to the company's plan to decrease the average age of its representatives. Heckman did not deny Hartman's statement that "older" representatives would soon be replaced.

17. Throughout 2014, Hartman continued to make comments to Sullivan about her age, including discussing the "shift in culture" and stating "It isn't the old days where all you older reps had things different." In mid-2014, Hartman hired a 26-year-old male over a more qualified older female. When Sullivan questioned his decision, he stated he was "supposed to hire" the male according to the "higher ups."

18. Hartman's treatment began taking a toll on Sullivan's physical and emotional well-being. She felt constant stress, her blood pressure rose, and she had difficulty sleeping.

19. Concerned with her deteriorating health, Sullivan began searching for other opportunities in the company. She put her house on the market in case there was a position that would require a move. She called Regional Business Manager Ray Andrews in April 2014 to see if she could apply to a position in Los Angeles, but Andrews discouraged her from applying.

20. On information and belief, at least five other employees over the age of 40 who reported to Hartman were either terminated, resigned, or went on disability leave during this time due to the way Hartman treated them.

21. In August 2014, after a field visit, Hartman gave Sullivan a lower performance evaluation than she had received in the past few years and started saying she needed coaching.

22. Throughout 2013 and 2014, Sullivan approached other members of management, including Diann Matthews, Thao Marzullo, and Carol Thompson, to report that she felt

discriminated against. She told them Hartman was treating her differently because she was a woman and asked if it was true that Defendants were going to get rid of the "old" reps. In response, each asked Sullivan how much longer she wanted to work with the company.

23. On October 1, 2014, Sullivan again spoke with Andrews regarding Hartman and reported that she felt she was in a hostile environment. She relayed the stress Hartman's bullying was causing and that he was lowering her ratings. Andrews asked for specifics of Hartman's conduct, for which Sullivan provided many examples from their field visits. Sullivan shared that Hartman's treatment had become so unbearable that she felt she had three options: transfer, go on a disability leave due to the stress Hartman was causing, or retire.

24. During a follow up call on October 6, Andrews' only proposed solution was that Sullivan give Hartman a chance. He did not take Sullivan seriously, repeatedly telling her that she should "tough it out" and expressed his skepticism that the environment was truly so bad.

25. On October 7, 2014, Sullivan called Hilary Profrock in JNJ's HR department and reported that Hartman had put her in a hostile work environment and that she felt bullied. Profrock suggested Sullivan speak with Laura Warner, JNJ's Employee Relations Manager. Sullivan spoke to Warner on October 9. She again reported her feelings of age and sex discrimination to Warner and explained Hartman's attitudes toward women and older reps.

26. On October 14, Sullivan told Andrews that she could not take Hartman's bullying any longer, and could no longer put her health at risk by being in the stressful environment.

27. The following day, October 15, Sullivan spoke with her former manager, David Miller, who was a management employee in a different JNJ operating company to see if he had any open positions; he said he did not.

28. Sullivan spoke with Heckman on October 17 to ask for help with the situation. Rather than help her, Heckman focused the conversation on retirement and told Sullivan it was an emotional time. Sullivan felt more hopeless and distraught after Heckman's lack of support.

29. On October 28, Profrock told Sullivan that her only option was to continue riding with Hartman. Sullivan was fearful of being alone with Hartman.

30. Despite reaching out to HR, Regional Business Directors, Employee Relations, and other members of management, Defendants did nothing to address Sullivan's complaints.

31. Since there was no other option except to keep working under Hartman's demeaning and hostile treatment, and Sullivan could not tolerate his treatment any longer, she was constructively discharged on October 31, 2014.

## FIRST CLAIM FOR RELIEF
### Age Discrimination
### In Violation of the ADEA

32. Sullivan incorporates the foregoing paragraphs by reference.

33. The ADEA, 29 U.S.C. § 623 *et seq.*, provides that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." It further provides that it is unlawful for an employer because of age to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee."

34. At all relevant times, Sullivan was an "employee" and JBI and JNJ were Sullivan's "employers" as those terms are defined under the statute.

35. As described herein, Defendants' conduct violated 29 U.S.C. § 623 *et seq.*

36. As a direct result of Defendants' unlawful conduct in violation of the ADEA, Sullivan has suffered and continues to suffer loss of past and future income and other damages in an amount in excess of $75,000.

37. Sullivan is entitled to her attorney's fees and costs incurred in connection with this claim.

38. As a direct result of Defendants' willful and unlawful conduct, Sullivan is also entitled to liquidated damages.

### SECOND CLAIM FOR RELIEF
### Sex Discrimination
### In Violation of Title VII

39. Sullivan incorporates the foregoing paragraphs by reference.

40. 42 U.S.C. § 2000e-2(a)(1) provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."

41. Sullivan is an employee and Defendants are her employer for purposes of the definition set forth in 42 U.S.C. §§ 2000e, *et. seq*.

42. The unwelcome conduct to which Sullivan was subjected substantially interfered with her employment and created an intimidating, hostile, and offensive work environment.

43. As described herein, Defendants' conduct violated 42 U.S.C. § 2000e, *et seq*.

44. As a result of Defendants' violations, Sullivan has suffered and will continue to suffer past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages in an amount in excess of $75,000.

45.  She is also entitled to attorneys' fees and costs incurred in connection with this claim.

46.  Defendants committed the above-alleged facts with malice, reckless disregard, or deliberate disregard for Sullivan's rights and safety.  As a result, she is entitled to punitive damages.

### THIRD CLAIM FOR RELIEF
### Retaliatory Discrimination
### In Violation of the ADEA

47.  Sullivan incorporates the foregoing paragraphs by reference.

48.  The ADEA provides that it is unlawful for an employer "to discriminate against any of his employees . . . because such individual . . . opposed any practice made unlawful by this section, or because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation . . . under this chapter." 29 U.S.C. § 623(d).

49.  At all relevant times, Sullivan was an "employee" and JBI and JNJ were Sullivan's "employers."

50.  As described herein, Sullivan engaged in conduct protected under the ADEA and was subsequently constructively discharged in violation of 29 U.S.C. § 623(d).

51.  As a direct result of Defendants' unlawful conduct, Sullivan has suffered and continues to suffer loss of past and future income and other damages in an amount in excess of $75,000.

52.  Sullivan is entitled to her attorney's fees and costs incurred in connection with this claim.

53.  As a direct result of Defendants' willful and unlawful conduct, Sullivan is also entitled to liquidated damages.

## FOURTH CLAIM FOR RELIEF
### Reprisal Discrimination
### In Violation of Title VII

54.     Sullivan incorporates the foregoing paragraphs of by reference.

55.     42 U.S.C. § 2000e-3 provides that it is an unlawful employment practice for an employer "to discriminate against any individual because [s]he has opposed any practice made an unlawful employment practice by this subchapter."

56.     Sullivan is an employee and Defendants are her employer for purposes of the definition set forth in 42 U.S.C. §§ 2000e, *et. seq*.

57.     Defendants' conduct described herein violated 42 U.S.C. § 2000e-3.

58.     As a result of Defendants' unlawful conduct, Sullivan has suffered and will continue to suffer a loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages in an amount in excess of $75,000.

59.     She is also entitled to attorneys' fees and costs incurred in connection with this claim.

60.     Defendants committed the above-alleged facts with malice, reckless disregard, or deliberate disregard for Sullivan's welfare, rights, and safety.  As a result, she is entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF
### Age Discrimination
### In Violation of Oregon Statute § 659A.030

61.     Sullivan incorporates the foregoing paragraphs of by reference.

62.     Oregon Statute § 659A.030(1)(a), (b) provides that it is an unlawful employment practice for an employer "because of . . . age" "to refuse to hire or employ the individual or to

bar or discharge the individual from employment" or to "discriminate against the individual in compensation or in terms, conditions or privileges of employment."

63.     Sullivan is an employee and Defendants are her employer for purposes of § 659A.030.

64.     Defendants' conduct described herein violated Oregon Statute § 659A.030.

65.     As a result of Defendants' unlawful conduct, Sullivan has suffered and will continue to suffer a loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages.  She is also entitled to attorneys' fees, expert witness fees, and costs incurred in connection with this claim.

66.     Defendants committed the above-alleged facts with malice, reckless disregard, or deliberate disregard for Sullivan's welfare, rights, and safety.  As a result, she is entitled to punitive damages.

### SIXTH CLAIM FOR RELIEF
### Sex Discrimination
### In Violation of Oregon Statute § 659A.030

67.     Sullivan incorporates the foregoing paragraphs of by reference.

68.     Oregon Statute § 659A.030(1)(a), (b) provides that it is an unlawful employment practice for an employer "because of . . . sex" "to refuse to hire or employ the individual or to bar or discharge the individual from employment" or to "discriminate against the individual in compensation or in terms, conditions or privileges of employment."

69.     Sullivan is an employee and Defendants are her employer for purposes of § 659A.030.

70.     Defendants' conduct described herein violated Oregon Statute § 659A.030.

COMPLAINT - 10

71. As a result of Defendants' unlawful conduct, Sullivan has suffered and will continue to suffer a loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages. She is also entitled to attorneys' fees, expert witness fees, and costs incurred in connection with this claim.

72. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for Sullivan's welfare, rights, and safety. As a result, she is entitled to punitive damages.

## SEVENTH CLAIM FOR RELIEF
### Retaliation
### In Violation of Oregon Statute § 659A.030

73. Sullivan incorporates the foregoing paragraphs of by reference.

74. Oregon Statute § 659A.030(1)(f) provides that it is an unlawful employment practice for "any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice . . ."

75. As described herein, Sullivan engaged in protected conduct by opposing Defendants' unlawful conduct.

76. Defendants' conduct described herein violated Oregon Statute § 659A.030(1)(f).

77. As a result of Defendants' unlawful conduct, Sullivan has suffered and will continue to suffer a loss of past and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages. She is also entitled to attorneys' fees, expert witness fees, and costs incurred in connection with this claim.

78. Defendants committed the above-alleged facts with malice, reckless disregard or deliberate disregard for Sullivan's welfare, rights, and safety. As a result, she is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Susan Sullivan prays for the following relief against Defendants Johnson and Johnson and Janssen Biotech, Inc.:

A. Entry of judgment in favor of Sullivan against Defendants on all claims for relief;

B. For all relief available under the ADEA, 29 U.S.C. § 623 *et seq.*, Title VII, 42 U.S.C. §§ 2000e, et seq., and Oregon Statute § 659A.030, including past and future wages, emotional distress, liquidated damages, punitive damages;

C. All legal and equitable relief available on Sullivan's claims in an amount exceeding $75,000;

D. Costs, disbursements, expert witness fees, and attorney's fees;

E. Prejudgment interest; and

F. All such other relief as the Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Susan Sullivan demands a jury trial for all issues so triable.

Date: July 4, 2016

s/ Quinn E. Kuranz
**THE OFFICE OF Q.E. KURANZ, AAL, LLC**
**Quinn E. Kuranz**
Email: quinn@kuranzlaw.com
65 SW Yamhill St., Suite 300
Portland, OR 97204
Tel: (503) 757-4749

**NICHOLS KASTER, PLLP**
**James H. Kaster**, *pro hac vice forthcoming*
Email: kaster@nka.com
**Janet M. Olawsky**, *pro hac vice forthcoming*
Email: jolawsky@nka.com
80 South Eighth Street, 4600 IDS Center
Minneapolis, Minnesota 55402-2242
Tel: (612) 256-3200

Attorneys for Plaintiff Susan Sullivan